**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-01193-STV

MICHELLE WELTON,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

      Defendant.

_____

**ORDER**

_____

Magistrate Judge Scott T. Varholak

      This matter is before the Court on Plaintiff Michelle Welton's Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq.*, and 1381-83c, respectively.  [#1]  The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  [#13]  The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#11], the parties' briefing [##16-17, 20], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal.  For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I.    LEGAL STANDARD

### A.    Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[1]  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment."  *Lax*, 489 F.3d at 1084.  "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled."  *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005).  The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

---

[1] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[2]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite his impairments—is sufficient to allow the claimant to perform his past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

### B. Standard of Review

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and

---

[2] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II.   BACKGROUND

Plaintiff was born in 1964. [AR 71, 157][3]  Plaintiff completed high school and two years of college education. [AR 78, 201]  Plaintiff is able to communicate in English. [AR 199]  On or about April 15, 2014, Plaintiff filed a Title II application for DIB and a Title XVI application for SSI. [AR 71, 157-65]  Plaintiff originally claimed a disability

---

[3]  All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case. [#11]

onset date of August 30, 1991 [AR 71, 228], but amended that date to November 1, 2003, at the hearing before Administrative Law Judge ("ALJ") Thomas Inman [AR 11, 31]. Thus Plaintiff was 39 years old at the time of the alleged onset. [AR 18] Plaintiff claims disability based upon the following physical impairments: pelvic pain, bowel problems, digestive issues, and vomiting. [AR 200] Plaintiff worked in a variety of positions for several airlines prior to the alleged disability onset date, including as a customer service agent for Continental Airlines and a customer service supervisor for G.P. Express Airlines. [AR 209, 214] Plaintiff's most recent prior work experience was as a flight attendant for Frontier Airlines from July 1995 through September 2003. [AR 182, 190, 209] Plaintiff attempted to return to work as a gate agent for Skywest in February 2008, but had to quit during training after one to two months, due to her disability. [AR 182]

## A. Medical Background

Plaintiff experienced an ectopic pregnancy in 1991 and a miscarriage in 1996. [AR 265, 498-99] In approximately 1999, Plaintiff began treatment for chronic pelvic pain. [AR 265] Plaintiff presented to Dr. William Schoolcraft, who assessed Plaintiff for chronic pelvic pain, and noted possible pelvic adhesions and/or endometriosis. [*Id.*] On October 20, 1999, Dr. Schoolcraft performed a laparoscopy and lysis of adhesions, diagnosing Plaintiff with pelvic pain, pelvic adhesions, and a right tubal obstruction. [AR 267] Dr. Schoolcraft did not observe endometriosis. [AR 268] Plaintiff reported feeling "dramatically better" within a week after the operation, but complained of increasing pelvic pain in the lower right quadrant in November 1999. [AR 262-63] Dr. Schoolcraft noted the "[u]nclear etiology for pain," and recommended a gastrointestinal ("GI")

consultation. [AR 262] Afterward, Plaintiff apparently did not present for any further medical appointments until 2002. [AR 260]

Plaintiff began to see Dr. Arthur Sands in March 2002. [AR 477] Dr. Sands reported that while Plaintiff had "marked" lower right quadrant chronic pain, it was "well controlled" with the medication Fiorinal. [*Id.*] The following month, Plaintiff reported to Dr. Sands that she had generally "been doing okay." [AR 476] Plaintiff was resistant to surgery despite some continued pain, but Dr. Sands encouraged her to give "strong consideration" to surgical options. [*Id.*] Plaintiff reported continued lower abdominal pain in May 2002, but her current medications were controlling the pain. [AR 475] Plaintiff was scheduled for an oophorectomy to remove the ovaries on the right side, but declined to go through with the procedure. [*Id.*] Throughout the remainder of 2002, Plaintiff reported that she was doing well and that the pain was much better, and Dr. Sands observed that Plaintiff's multiple problems were stable. [AR 318-19, 472]

In early 2003, Plaintiff presented to the emergency room for chronic abdominal pain. [AR 315] She also requested paperwork for a leave of absence due to the pain from her position at Frontier Airlines, from her provider, Physician Assistant ("PA") Cathy Robinson. [*Id.*] Plaintiff met with Dr. Rand Compton for a gastroenterology consultation in April 2003. [AR 281-82] Plaintiff reported to Dr. Compton that she "had severe problems with recurrent nausea and vomiting and periumbilical pain" over the last two years, though her abdominal pain was controlled with Fiorinal and codeine. [AR 281] At that time, Plaintiff was on partial medical leave from her work as a flight attendant because of her pain and was "under significant stress because of her job and illness." [*Id.*] Dr. Compton performed an upper GI endoscopy on April 22, 2003, finding

mild inflammation in the stomach and the first part of the duodenum, and tiny incidental hiatus hernia. [AR 283-84; *see also* AR 339-40, 492-93] Dr. Compton also performed a small bowel biopsy which revealed "no significant histopathologic features." [AR 285; *see also* AR 489] In the months following those procedures through 2004, Plaintiff's providers reported that she was doing okay and feeling fine, other than the lower abdominal pain, which Plaintiff often described as stable with medications. [AR 309-11, 314] Plaintiff also reported that she was swimming for exercise. [AR 312]

Plaintiff continued to report abdominal pain in 2005 through 2007, but otherwise noted that she felt fine—even at times stating she felt great—that the pain was not getting worse, and that she gained significant relief from her pain medication. [AR 293-94, 296, 298-300, 305-06] Similarly, in January 2008, Plaintiff noted that although her abdominal pain was severe if she did not take her medications, and that she had burned herself using a heating pad on her abdomen, she otherwise felt "great." [AR 327] In April 2008, Plaintiff complained of a possible ovarian cyst, abdominal pain, and loss of appetite. [AR 326] Cathy Robinson explained that the symptoms could be a result of appendicitis and advised Plaintiff to go to the emergency room if the pain got worse, but Plaintiff ultimately refused to go to the hospital. [*Id.*] A few months later, Plaintiff reported that she was "happy in her life," that her abdominal pain was "controlled with her multiple medications," and that she had "no concerns" at her appointment. [AR 324] Similarly, throughout 2009 to 2011, Plaintiff's providers noted that she was "doing fine," had "no complaints," and that her medications were "keeping her abdominal pain under control." [AR 322; *see also* AR 453-55] Slightly complicating Plaintiff's medical

situation, however, was the fact that she did not have health insurance. [AR 320, 455, 460-61]

The medical records do not include any documentation from 2012. In 2013, Plaintiff complained of a possible urinary tract infection, nausea, and vomiting, in addition to her chronic abdominal pain. [AR 357, 361-69] Plaintiff began to see PA Stephanie Keene, and reported exercising through aerobics and cardio, strength, and weight training more than three times per week. [*See, e.g.*, AR 366, 368] Keene explained that there were limited options in treating Plaintiff's nausea and pain, as Plaintiff could not afford to see a gynecologist for definitive surgery, or a pain management specialist. [AR 367] Keene also suspected that Plaintiff's urinary symptoms were a result of taking consistent high doses of certain medications. [*Id.*; *see also* AR 361-62] Plaintiff reported particularly severe vomiting in June 2013, but refused to go to the emergency room. [AR 362] She also complained that she had experienced several months of urinary retention and increased pelvic pain, but did not schedule an appointment with her providers. [AR 361-62] In late 2013 and early 2014, Keene reported that Plaintiff was under a lot of stress due to her mother's cancer diagnosis, leading to higher pain levels. [AR 350, 354] Plaintiff reported irritable bowel syndrome ("IBS"), nausea, and anxiety in November 2013 [AR 354-55], but her symptoms had largely improved or resolved by early 2014 [AR 350].

During appointments with Dr. Kevin Boyle throughout 2015, Plaintiff's conditions, particularly her abdominal pain, were reportedly stable on her current medications. [AR 392, 406, 409, 411] Specifically, Dr. Boyle noted that Plaintiff's chronic pain was "[c]ontrol[led] for the most part with current medication" [AR 409], and that Plaintiff had

"noted quite a bit of improvement in the chronic pain" [AR 411]. Nevertheless, Dr. Boyle wrote letters stating that Plaintiff was unable to work in any capacity due to her chronic abdominal pain, and also certifying that Plaintiff had an IBS diagnosis, causing frequent vomiting. [AR 378-79, 409, 411, 413]

Throughout the course of her treatment, Plaintiff requested prescription refills before they were due on several occasions, including in 2002 [AR 319, 472], 2003 [AR 315-16], 2006 [AR 299], 2007 [AR 294], 2008 [AR 324], and 2010 [AR 459], and at times claiming that he prescriptions had been stolen [AR 294, 319, 322, 470, 472]. Relatedly, Plaintiff's providers have noted her addiction to pain medication, advised Plaintiff to decrease dosages or stop use altogether, or have refused to continue refilling, or allowing early refills of, Plaintiff's prescriptions. [AR 325, 381, 470, 472] For example, In September 2009, after receiving a phone call, purportedly from Plaintiff's sister, requesting an early medication refill, Robinson informed Plaintiff that the providers "had decided to discontinue prescribing her pain medications," and were referring her to a pain doctor in Denver. [AR 470] However, Plaintiff has felt the need to continue the medications due to her history of chronic abdominal pain. [AR 325]

### B.    Procedural History

Plaintiff's applications for DIB and SSI were initially denied on June 12, 2014. [AR 90, 94] On August 14, 2014, Plaintiff filed a request for a hearing before an ALJ. [AR 97] An initial hearing was conducted before ALJ Thomas Inman on December 16, 2015. [AR 60-68] The hearing was postponed in order to give Plaintiff an opportunity to retain counsel. [AR 67-68] A second hearing was held before ALJ Inman on March 3,

2016, at which Plaintiff and vocational expert ("VE") Ashley Bryars both testified. [AR 25-59] Plaintiff was represented by attorney Brandon Selinsky. [*Id.*; *see also* AR 148]

On April 14, 2016, the ALJ issued a decision denying Plaintiff benefits. [AR 11-20] Plaintiff timely requested a review of that decision by the Appeals Council [AR 6], which denied her request for review on March 16, 2017 [AR 1-3]. Plaintiff timely filed an appeal with this Court on May 15, 2017. [#1] Because the Appeals Council denied Plaintiff's appeal, the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

### C.    The ALJ's Decision

The ALJ denied Plaintiff's applications for DIB and SSI after evaluating the evidence pursuant to the five-step sequential evaluation process. [AR 11-20] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2003, the alleged onset date. [AR 13] At step two, the ALJ found that Plaintiff had the following severe impairments: chronic abdominal pain and IBS. [*Id.*] At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations. [AR 15]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but with the following limitations:

> [Plaintiff] cannot climb ladders, ropes or scaffolds and cannot push/pull to operate hand controls; she is limited to occasional stooping, kneeling, crouching and crawling; and, she needs to sit 15 minutes after two hours of walking or standing.

[*Id.* (emphasis omitted)]  The ALJ provided a narrative setting forth the relevant evidence considered in determining the RFC and assigned weight to each of the medical opinions in the record.  [AR 15-18]

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a flight attendant.  [AR 18]  Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  [*Id.*] Specifically, the ALJ agreed with the VE's testimony opining that Plaintiff could perform the following representative occupations:  assembler, small products, mail room clerk, and office helper.  [AR 19]  Accordingly, the ALJ determined that Plaintiff was not under a disability from November 1, 2003 through April 14, 2016 (the date of the ALJ's decision).  [AR 19-20]

## III.   ANALYSIS

Plaintiff raises three main challenges to the ALJ's decision on appeal.  First, Plaintiff contends that the ALJ's determination of her credibility was not supported by substantial evidence and that the ALJ failed to make adequate findings regarding the functional effects of her pain.  [#16 at 19-21, 24-27]  Second, Plaintiff argues that the ALJ gave insufficient consideration to Plaintiff's non-exertional limitations in the RFC determination.  [*Id.* at 21-24]  Third, Plaintiff maintains that the ALJ did not properly weigh the opinion evidence from her treating physician, and that the ALJ's findings regarding the opinion evidence were otherwise not based on substantial evidence and did not address the relevant factors set forth in the regulations.  [*Id.* at 27-30]  The Court addresses each of these arguments in turn.

## A.    The ALJ's Findings Regarding Plaintiff's Credibility and Pain

Plaintiff claims that the ALJ's finding that Plaintiff was not entirely credible was not supported by substantial evidence.  [#16 at 19-21]  Relatedly, Plaintiff argues that the ALJ did not make adequate findings regarding the functional effects of Plaintiff's reported pain.  [*Id.* at 24-27]  By contrast, Defendant contends that the ALJ was justified in only partially crediting Plaintiff's testimony about her symptoms and that his findings are supported by the record.  [#17 at 15-20]

As noted above, at step four, the Commissioner must determine whether the claimant's RFC—the functional capacity the claimant retains despite her impairments—is sufficient to allow the claimant to perform her past relevant work, if any.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan*, 399 F.3d at 1261; *Bailey*, 250 F. Supp. 3d at 784.  "The RFC must reflect an assessment of both severe and non-severe impairments and where there are subjective symptoms, such as pain, the ALJ must address whether and how the claimant's pain affects his/her 'capacity to work.'" *Brozovich v. Colvin*, No. 14-cv-03436-MSK, 2016 WL 3900685, at *4 (D. Colo. July 19, 2016) (quoting 20 C.F.R. §§ 404.1529, 416.929).  "Subjective allegations of pain alone are not sufficient to establish a disability."  *Mirabal v. Colvin*, No. 1:15-cv-00869-LF, 2016 WL 8230702, at *4 (D.N.M. Dec. 30, 2016) (citing *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004)).  Instead, the ALJ must apply a "specified analytical rubric" under Social Security Ruling ("SSR") 16-3p.[4]  *Brozovich*, 2016 WL 3900685, at *4; *see also* SSR 16-3p, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016).

---

[4]  As the parties recognize, SSR 16-3p superseded SSR 96-7p by "eliminating the use of the term 'credibility,'" in the Ruling language, in order to "clarify that subjective symptom evaluation" is not a character evaluation.  *Parker v. Berryhill*, No. 16-cv-2378-

SSR 16-3p dictates a two-step process for the ALJ to analyze complaints of pain. *Mirabal*, 2016 WL 8230702, at \*4 (citing SSR 16-3p, 2016 WL 1119029, at \*3; 20 C.F.R. §§ 404.1529(b)-(c); 416.929(b)-(c)).  First, the ALJ determines whether the claimant has a medically determinable impairment ("MDI")—a "pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citing SSR 16-3p, 2016 WL 1119029, at \*3; *Branum*, 385 F.3d at 1273).  Second, the ALJ considers the claimant's "statements about the intensity, persistence, and limiting effects of symptoms," and evaluates whether those statements "are consistent with objective medical evidence and other evidence in the record." *Parker*, 2017 WL 3315625, at \*4 n.7; *see also Brozovich*, 2016 WL 3900685, at \*4; SSR 16-3p, 2016 WL 1119029, at \*4. As part of that analysis, the ALJ should consider the following factors:

(i)     Daily activities;
(ii)    The location, duration, frequency, and intensity of pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
(v)     Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
(vi)    Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

---

WJM, 2017 WL 3315625, at \*4 n.7  (D. Colo. Aug. 3, 2017) (quoting SSR 16-3p, 81 Fed. Reg. 14166, 14167 (Mar. 28, 2016)).  "ALJ[]s are now instructed to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and to evaluate whether the statements are consistent with objective medical evidence and other evidence in the record." *Id.*; *see also* SSR 16-3p, 2016 WL 1119029, at \*4 (S.S.A. Mar. 16, 2016).  Because SSR 16-3p went into effect on March 28, 2016, and the ALJ's decision was issued on April 14, 2016, SSR 16-3p applies here, though courts have noted that the analysis under SSR 16-3p and SSR 96-7p  is very similar.  *See, e.g.*, *Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, at \*8 (W.D. Okla. Sept. 11, 2017); *Mirabal*, 2016 WL 8230702, at \*5 n.6.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1119029, at *7.

Here, the ALJ found that Plaintiff's chronic abdominal pain and IBS constituted severe impairments. [AR 13] The ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." [AR 18] In making this conclusion, Plaintiff argues that the ALJ failed to adequately address the seven factors in the regulations, including Plaintiff's daily activities, her medications, her pursuit of treatment, and the non-medical measures that Plaintiff took to relieve her pain. [#16 at 20-21, 26-27]

### 1. Daily Activities

Plaintiff contends that her daily activities discussed by the ALJ are not inconsistent with disability. [#16 at 20, 26] "While 'sporadic performance' of activities, like performing a few household tasks, 'does not establish that a person is capable of engaging in substantial gainful activity,' the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported limitations." *Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, at *9 (W.D. Okla. Sept. 11, 2017) (quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987)) (internal citation omitted) (collecting cases); *see also Welch v. Colvin*, 566 F. App'x 691, 694 (10th Cir. 2014) (finding gaps in treatment and claimant's testimony that she was able to do light yard work, chores, and also cook, grocery shop, drive, and visit her family, supported the ALJ's credibility determination); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ's finding that claimant was not fully

credible was supported by claimant's testimony that she could care for herself, her home, and her children, drive, shop, handle finances, garden, visit friends, and go out to eat); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (explaining that "in determining the credibility of pain testimony" ALJ may consider "the nature of [claimant's] daily activities").

Here, the ALJ noted Plaintiff's testimony that "she walked for exercise" and that she reported exercising more than three times a week.[5]  [AR 16, 17]  The ALJ also explained that Plaintiff had reported "that she cared for her parents and managed both her own and their medicines," and that she went out to dinner with her relatives.  [AR 18]  Moreover, in considering Plaintiff's potential mental limitations, the ALJ observed Plaintiff's reports that "she cared for her cat, prepared meals for herself and her parents, . . . cleaned the home off and on during the day," and shopped.  [AR 14]; *see Cunningham v. Astrue*, No. 08-cv-02774-LTB, 2010 WL 96413, at *9 (D. Colo. Jan. 7, 2010) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir.2005) for the proposition that an ALJ's findings at other steps of the sequential process may provide a basis to uphold conclusions at a different step).  The ALJ concluded that Plaintiff's "activities of daily living [we]re inconsistent with total disability."  [AR 18]

Although the ALJ also considered evidence of some limitations on Plaintiff's daily activities, including Plaintiff's bouts of vomiting and nausea, and her need to lie down with abdominal heating pads [AR 16], "it is the ALJ's role and not the Court's to resolve

---

[5] During the hearing, Plaintiff argued that records indicating that she was exercising three times a week, including through aerobic, cardiovascular, and strength and weight training, was a mistake, and that she does not actually exercise.  [AR 46]  Nevertheless, Plaintiff also stated that she walks and does other "things . . . [to] try to stay healthy." [AR 37]

such conflicts in the evidence" and "Plaintiff has not established that the ALJ erred in relying upon" her daily activities in evaluating her "subjective complaints." *Wagner*, 2017 WL 3981147, at *9; *see also Paulek v. Colvin*, 662 F. App'x 588, 593 (10th Cir. 2016) (finding subjective complaint analysis sufficient where ALJ noted absence of "significant objective findings" and found that claimant's testimony regarding activities of daily living "not consistent with a totally disab[ling] level of physical impairment").

## 2. Medications and Pursuit of Treatment

Plaintiff also argues that "there was evidence that [she] pursued treatment as actively as she possibly could within the limitations her lack of health insurance prior to 2014 imposed" [#16 at 27], and that the ALJ "made no findings regarding . . . the treatment other than medication" that Plaintiff took [*id.* at 26]. Plaintiff also claims that the ALJ "made no findings regarding . . . the type, dosage, and effectiveness" of her medication. [*Id.*] At the same time, Plaintiff recognizes that "[w]ith regard to [her] failure to visit an emergency room or be hospitalized since 20[0]3,[6] the evidence is complicated," though she argues that "a reasonable person would not find it to support an inference of nondisability." [*Id.* at 20] Plaintiff also admits that she refused, on multiple occasions, to visit the emergency room or consider surgical options, but contends that the ALJ should have considered evidence that some providers advised Plaintiff that surgical intervention "was impossible or futile." [*Id.* at 21]

The ALJ must evaluate the plaintiff's testimony about her symptoms "in relation to the objective medical evidence" in determining whether she was disabled. 20 C.F.R.

---

[6] Although Plaintiff states in her brief that she has not been hospitalized since 2013, Plaintiff confirmed at the hearing that in fact she had not been hospitalized since 2003, and the records confirm that year. [AR 36; *see also* AR 315]

§ 416.929(c)(4); *see also Thomas v. Berryhill*, 685 F. App'x 659, 664 (10th Cir. 2017).

"[I]f the frequency or extent of the treatment sought by an individual is not comparable

with the degree of the individual's subjective complaints, or if the individual fails to follow

prescribed treatment that might improve symptoms," the ALJ "may find the alleged

intensity and persistence of an individual's symptoms are inconsistent with the overall

evidence of record."  SSR 16-3p, 2016 WL 1119029, at *8; *see also Huston*, 838 F.2d at

1132 (In determining the credibility of pain testimony, the ALJ may consider the

"frequency of medical contacts" and "the extensiveness of the attempts . . . to obtain

relief.").

Here, the ALJ recounted the objective medical evidence in detail, noting that

Plaintiff first presented for treatment in November 1999 for a pelvic ultrasound with no

diagnostic abnormalities seen.  [AR 16]  The ALJ explained that Plaintiff had a history of

pelvic adhesions but that she had pain relief after the adhesions were lysed.  [*Id.*]  The

ALJ noted the three-year gap in Plaintiff's treatment between 1999 and 2002.  [*Id.*]  As

the ALJ recounted, Plaintiff confirmed at the hearing that she had not been treated at an

emergency room or hospitalized since 2003.  [*Id.*; *see also* AR 36]  The ALJ discussed

the numerous times that Plaintiff reported that she felt fine when she was taking her

medications, including that Lyrica in particular had given her significant relief, and the

several occasions when Plaintiff reported to providers that she felt great and her pain

control was adequate or stable.  [AR 16]  The ALJ also considered Plaintiff's history with

recurrent vomiting, and her refusal to present to the emergency room, as recommended

by her providers.  [AR 16-17]  The ALJ recounted how Plaintiff refused an ultrasound in

2014. [AR 17] The ALJ described Plaintiff's medications by name and discussed Plaintiff's requests and appointments for prescription refills. [AR 16-17]

In reviewing the medical evidence, the ALJ also discussed other factors from the regulations, including the location and duration of Plaintiff's pain, and precipitating and aggravating factors. In addition to describing Plaintiff's relief on various pain medications, the ALJ also recognized Plaintiff's reports that vomiting made her abdominal pain worse, and that Plaintiff's stress caused by her mother's cancer diagnosis increased her pain levels. [AR 16-17] The ALJ also reviewed measures taken by Plaintiff other than treatment to control the pain, including lying down with a sleeping pad both during the day and at night when the pain was particularly strong. [AR 16]

Plaintiff points to some conflicting evidence in the record, including two occasions—over the course of nearly ten years—where providers noted possible obstacles to surgery, and the difficulty she had obtaining treatment due to her lack of insurance, and argues that the ALJ failed to mention these circumstances. [#16 at 21] But Plaintiff overstates that evidence, which reveals that providers did in fact continue to consider surgical options [AR 259-60, 457],[7] and also that Plaintiff has not sought

---

[7] Specifically, Plaintiff states that "there is evidence that doctors had advised Ms. Welton that surgical treatment was impossible or futile," citing to an appointment with Dr. Schoolcraft in 2002 and an appointment with Dr. Sands in 2010. [#16 at 21 (citing AR 259-60, 457)] But Plaintiff's characterization of the record is not entirely accurate. In 2002, Dr. Schoolcraft noted that Plaintiff's gynecologist did not think that Plaintiff's "symptoms would be improved by another laparoscopy" or an oophorectomy. [AR 260] Dr. Schoolcraft also reported that it was "a question whether a TAH-BSO [total abdominal hysterectomy, bilateral salpingo-oopherectomy] would eliminate her chronic pain." [*Id.*] However, Dr. Schoolcraft had not seen Plaintiff for three years at the time, and indicated that he would perform an ultrasound and then follow up with Plaintiff "to determine any future treatment options." [*Id.*] In 2010, Plaintiff informed Dr. Sands that

surgical intervention or alternative treatments even since obtaining health insurance. [*See* AR 259-60, 392-93, 457]    Furthermore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."    *Lax*, 489 F.3d at 1084 (quotation omitted).  The ALJ thus reasonably relied on the lack of supporting objective medical evidence to conclude that Plaintiff's subjective symptoms, including her pain, were not disabling.

### 3.  Conclusion

The ALJ articulated sufficient reasoning and relied upon proper factors in determining that Plaintiff's symptoms did not prevent her from performing work-related activities.    To the extent Plaintiff argues that the ALJ should have discussed the symptom evaluation factors in greater detail, or did not adequately discuss all of the relevant factors, "so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence . . . .  [C]ommon sense, not technical perfection, is [the court's] guide."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotations and citation omitted); *see also Valdez v. Berryhill*, No. 17-cv-00478-RBJ, 2017 WL 5988652, at *5 (D. Colo. Dec. 4, 2017) (ALJ not required to specifically discuss each of the seven factors listed in sections 404.1529(c)(3) and 416.929(c)(3)).   The ALJ here set forth specific, substantial evidence in the evaluation of Plaintiff's subjective complaints, and applied the correct legal standards in making that determination.

---

she had "been previously told that she could have not have a hysterectomy due to scar tissue between the bowel and the uterus."  [AR 457]  But at that same appointment, Dr. Sands explained his belief that Plaintiff "could have her pain relieved with a total hysterectomy" and possible bowel resection.  [*Id.*]

**B.      The ALJ's Consideration of Non-Exertional Factors**

Plaintiff next claims that the ALJ failed to assign restrictions related to Plaintiff's non-exertional limitations in the RFC, including her nausea, vomiting, and mental impairment.  [#16 at 21-24]  In response, Defendant states that the ALJ reasonably did not include limitations related to Plaintiff's nausea and vomiting in the RFC because Plaintiff only complained of these issues intermittently and because Plaintiff had no limitations as a result of her generalized anxiety disorder.  [#17 at 12-15]

In determining Plaintiff's RFC, the ALJ states that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  [AR 15]  With respect to Plaintiff's nausea and vomiting, the ALJ recognized Plaintiff's testimony that "she had daily abdominal pain and intermittent vomiting," that vomiting made her abdominal pain worse, and "that she had no problems concentrating unless she was vomiting."  [AR 16] The ALJ reviewed records from 2013 that demonstrated Plaintiff had had severe vomiting, but "refused to go to the emergency room as recommended."  [AR 16-17]  The ALJ identified medication that stopped the vomiting and noted that Plaintiff had then denied current abdominal pain, nausea, vomiting and diarrhea.  [*Id.*]  As discussed by the ALJ, Plaintiff presented to providers in November 2013 again complaining of nausea, and IBS, but by May 2014, she noted that her symptoms were controlled and she refused an ultrasound.  [*Id.*]  Accordingly, Plaintiff has presented the Court with "no reason to doubt" that the ALJ took Plaintiff's non-exertional limitations of nausea and vomiting into account in the RFC analysis.  *Wade v. Colvin*, 26 F. Supp. 3d 1073, 1079 (10th Cir. 2014); *see also Lax*, 489 F.3d at 1084.

With respect to Plaintiff's anxiety, the ALJ did not discuss that impairment in the RFC analysis, but the Court nevertheless finds that the ALJ's RFC determination was proper. At step two, the ALJ "must . . . rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: '[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Wells*, 727 F.3d at 1068 (quoting 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)). Even if the ALJ ultimately finds "that a claimant's medically determinable mental impairments are 'not severe,'" he generally must "further consider and discuss them as part of his [RFC] analysis at step four." *Id.* at 1064 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). In other words, "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Id.* at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). Notwithstanding the general rule, an ALJ may "of course, find at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities." *Id.* at 1065 n.3 (citing 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4)). Such a finding that the claimant has no limitation in any of the four functional areas "obviate[s] the need for further analysis at step four." *Id.*

Here, at step two, the ALJ recognized that Plaintiff had the medically determinable mental impairment of anxiety disorder, but concluded that Plaintiff had "no limitation" in activities of daily living, social functioning, or concentration, persistence, or pace, and that Plaintiff had not experienced any episodes of decompensation of an extended duration. [AR 13-14] Accordingly, the ALJ found that Plaintiff had no mental limitations, obviating any need for further analysis of Plaintiff's anxiety in the RFC

determination at step four.[8]  *See Wells*, 727 F.3d at 1065 n.3; *see also Boyer v. Colvin*, No. 15-1054-SAC, 2016 WL 1170950, at *4 (D. Kan. Mar. 23, 2016).  *Cf.   Vigil v. Berryhill*, No. 16-cv-01014-KLM, 2017 WL 3866768, at *6 (D. Colo. Sept. 5, 2017).

For these reasons, the Court finds that the ALJ's RFC determination, which did not include non-exertional limitations, was supported by substantial evidence, and that the ALJ applied the appropriate legal standards making that determination.

### C.    The ALJ's Consideration of Opinion Evidence

Plaintiff argues that the ALJ improperly gave "no weight" and "little weight" to the opinion of her treating physician, Dr. Kevin Boyle, while giving great weight to the opinion of the consultative examiner, without adequate explanation.[9]   [#16 at 27-30] Defendant responds that the ALJ gave good reasons for the weight afforded to each medical opinion, and that these reasons corresponded with the objective medical evidence.  [#17 at 20-24]

In considering medical opinions, the "ALJ must evaluate every medical opinion in the record . . . although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."  *Hamlin v.*

---

[8] After his step two functional limitation analysis, the ALJ concluded that Plaintiff's anxiety "causes no more than 'mild' limitation in any of the first three functional areas." [AR 15]  A finding of "mild" restrictions in the relevant functional areas, as opposed to a finding of no restrictions, *would* require further analysis at step four.  *See Wells*, 727 F.3d at 1065 n.3; *Vigil v. Berryhill*, No. 16-cv-01014-KLM, 2017 WL 3866768, at *6 (D. Colo. Sept. 5, 2017).  However, the ALJ's conclusion that the restrictions were no more than mild appears to be a misstatement or mistake, given the ALJ's more detailed analysis of each of the functional areas in the preceding paragraphs, in which he explicitly found "no limitation" on the claimant's activities of daily living, social functioning, and concentration, persistence or pace, and no evidence of episodes of decompensation of an extended duration.  [AR 14]

[9]  The ALJ also briefly discussed a December 2014 opinion by PA Kathleen Robinson [AR 17], but Plaintiff does not challenge the ALJ's decision with respect to that opinion on appeal.

*Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citation omitted). The regulations governing the Commissioner's consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *Boyd v. Berryhill*, No. 17-cv-00722-MEH, 2017 WL 4877213, at *11 (D. Colo. Oct. 30, 2017); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). "According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2) (stating that "[g]enerally, [the Commissioner] give[s] more weight to medical opinions from [the claimant's] treating sources"), 416.927(c)(2) (same).

In determining how much weight to be given to a treating physician's opinion, the ALJ will first decide whether the opinion qualifies for "controlling weight." To make that determination, the ALJ

> [M]ust first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotations and citations omitted); *see also O'dell v. Colvin*, No. 15-cv-00628-CBS, 2016 WL 5395247, at *3 (D. Colo. Sept. 27, 2016) (treating physician opinions "cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision," including "when an opinion is brief, conclusory, or unsupported by the medical evidence (citing *Frey*, 816 F.2d at 513)). Even if the treating physician's opinion is not entitled to

controlling weight, however, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Watkins*, 350 F.3d at 1300 (quotation omitted). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quotation omitted). The ALJ need not explicitly discuss each of these six factors in determining what weight to give a medical opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ "must give good reasons . . . for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted).

For example, in *Langley v. Barnhart*, the ALJ refused to give the claimant's treating psychiatrist's opinion controlling weight, explaining that it was unsupported by the objective medical evidence, including the psychiatrist's own records. 373 F.3d at 1121-22. The Tenth Circuit reasoned that while "[t]he ALJ provided a facially valid reason" for not affording the opinion controlling weight—that it was inconsistent with other evidence in the record—the court could "find no obvious inconsistencies" between the psychiatrist's opinion and his treatment notes or the record evidence. *Id.* at 1122.

The court ordered remand to the Commissioner because the ALJ's "reasons for rejecting that opinion [we]re not 'sufficiently specific' to enable th[e] court to meaningfully review his findings." *Id.* at 1123 (quoting *Watkins*, 350 F.3d at 1300). Similarly, in *O'dell v. Colvin*, this Court remanded to the Commissioner where the ALJ had not explicitly addressed purported inconsistencies between the treating physician's opinion, and his treatment notes and the record. 2016 WL 5395247, at *3-5. The Court concluded that "[w]ithout any supporting evidentiary citations or specificity, the ALJ's assertions regarding [the treating physician's] opinions are little more than conclusory statements and must be remanded for further explanation." *Id.* at *5. Moreover, the ALJ "ha[d] made no effort at discussing—or even citing—the specific portions of the objective evidence that support his position." *Id.* at 4.

By contrast, if the ALJ "set[s] forth a summary of the relevant objective medical evidence earlier in his decision," he is not required to "recite the same evidence again" in rejecting a medical opinion. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012); *see also Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) ("Although there was not a contemporaneous discussion of [the medical evidence] in discounting [the physician's] opinion, in reading the ALJ's decision as a whole, it is evident [the physician's] opinion is inconsistent with the record."); *Martinez v. Colvin*, No. 15-cv-00050-REB, 2016 WL 1247765, at *4 (D. Colo. Mar. 30, 2016) ("The ALJ's analysis of [the medical] evidence earlier in his opinion adequately substantiates his subsequent conclusion that [the physician's] assessment of plaintiff's functional capacity was not consistent with the medical evidence."). In *Endriss*, "the ALJ cited to a number of exhibits in the record," and though he "did not provide a contemporaneous discussion of

those records," the ALJ had made observations about the evidence in those exhibits "just a few pages earlier." 506 F. App'x at 775. For example, the ALJ had referenced the claimant's repeated reports of doing well, and records demonstrating that the claimant's condition had improved after physical therapy, surgery, and medication changes. *Id.* at 775-76. Moreover, "when the ALJ has properly discredited a claimant's subjective complaints of pain, he need not accept a medical source opinion premised on a contrary estimation of the claimant's credibility regarding her own functional and other limitations." *Manning v. Colvin*, 182 F. Supp. 3d 1156, 1162 (D. Colo. 2016) (quotation omitted).

### 1. Dr. Boyle's Opinions

Here, the ALJ first addressed the objective medical evidence at length [AR 16-17], and then decided to give "no weight" to Dr. Boyle's September 2015 opinion that Plaintiff "was unable to work in any capacity due to disability from chronic pelvic pain" [AR 17 (citing AR 411)]. Dr. Boyle's opinion was rendered after Plaintiff requested "a letter for disability stating she is unable to work." [AR 411] The ALJ also gave "little weight" to the assessment form completed by Dr. Boyle in March 2016. [AR 17 (citing AR 444-452)]

With respect to the first opinion, the ALJ explained that there was "no explanation" for Dr. Boyle's conclusion that Plaintiff could not work, and that the conclusion was "inconsistent" with Dr. Boyle's treating notes. [AR 17 (citing AR 411)] At the same appointment where Dr. Boyle opined that Plaintiff was unable to work due to chronic pelvic pain, Dr. Boyle also reported that Plaintiff had experienced "quite a bit of improvement in the chronic pain," had not been suffering from any side effects from

her medications, and was "able to function on activities of daily living." [AR 411] The ALJ cited to those treatment records, and gave other supporting evidentiary citations throughout his discussion of Dr. Boyle's opinions. [AR 17]. The Tenth Circuit has found internal inconsistencies like the ones referenced by the ALJ here, sufficient to support an ALJ's decision to reject a treating physician's opinion. *See, e.g.*, *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (finding ALJ's decision to give little weight to treating physician's opinion supported by substantial evidence where the physician's treatment note from the same day was inconsistent with the opinion he gave).

The ALJ also explained that Dr. Boyle's conclusory statement that the claimant was disabled was "a decision specifically reserved for the Commissioner." [AR 17] First, an ALJ has legitimate grounds to reject a medical provider's opinion that is "brief, conclusory, or unsupported by the medical evidence." *O'dell*, 2016 WL 5395247, at *3 (citing *Frey*, 816 F.2d at 513). Second, a treating physician's opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved" to the Commissioner. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also Lewis v. Colvin*, No. 13-1266-SAC, 2014 WL 4723106, at *2 (D. Kan. Sept. 23, 2014) (finding "no error by the ALJ in giving little weight to a conclusory opinion on the ultimate issue of disability" because such opinions "are reserved to the Commissioner" and "are never entitled to controlling weight or special significance"); *Cox v. Astrue*, No. 10-2404-SAC, 2011 WL 3651852, at *6 (D. Kan. Aug. 19, 2011) ("Giving controlling weight to [treating physician opinions on the ultimate issue of disability] would, in effect, confer upon the treating source the authority to make the determination or decision about whether an

individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."). Accordingly, the ALJ was correct that Dr. Boyle's opinion that Plaintiff was "unable to work in any capacity due to disability from chronic pelvic pain" was a decision specifically reserved to the Commissioner. [AR 17]

Finally, the ALJ's analysis of Dr. Boyle's 2015 opinion also was directly preceded by an in-depth discussion of the objective medical evidence. The ALJ found that Plaintiff had repeatedly reported that she felt fine—and at times even great—that her medications were controlling her pain, that she had refused to go to the emergency room and refused an ultrasound, and that she reported exercising. [AR 16-17]; *see Endriss*, 506 F. App'x at 777. In reviewing the medical evidence, the ALJ also recounted that testing had not demonstrated any diagnostic abnormalities, and that Plaintiff had normal bowel sounds, and a nontender and nondistended abdomen, including at appointments in 2011 and 2013. [AR 16-17] Although the ALJ did not provide a particularly detailed analysis of the inconsistencies between Dr. Boyle's opinion and the record, those inconsistencies are "obvious" in, and supported by, the record. *Langley*, 373 F.3d at 1122; *see also Best-Willie*, 514 F. App'x at 733 ("[I]n reading the ALJ's decision as a whole, it is evident [the medical source's] opinion [wa]s inconsistent with the record."); *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (finding that "the record provide[d] ample support" for the ALJ's conclusion that the treating physician's records were inconsistent with the evidence).

The ALJ's discussion of the objective evidence, and his discrediting of Plaintiff's subjective complaints, also supports his decision to give Dr. Boyle's second opinion

"little weight," especially insofar as Dr. Boyle opined that Plaintiff could only sit for two hours in an eight-hour workday. [AR 17] As the ALJ stated, that limitation was "inexplicable." [*Id.*] There is no indication in the objective evidence, reviewed in detail by the ALJ, that the Plaintiff was unable to sit for more than two hours a day. [AR 16-17] The ALJ stated that "[i]n light of the evidence and nature and frequency of treatment, the sitting limitation seems based on subjective complaints alone." [AR 17] But even Plaintiff's subjective complaints before the ALJ do not seem to support a sitting limitation. [AR 16] Although she noted that she had to lay down three to five times in an average week for abdominal pain, Plaintiff did not mention any problems with sitting. [AR 16, 32-49] With respect to the nature and frequency of Dr. Boyle's treatment, referenced by the ALJ, Dr. Boyle saw Plaintiff once in 2013 [AR 357-60], once in 2014 [AR 385-88], and every two to three months in 2015 [AR 392, 399, 405-06, 409-11, 415-17], predominantly for medication management, and never referenced Plaintiff's ability to sit. Furthermore, as discussed above, the ALJ properly discredited Plaintiff's subjective complaints of pain, and accordingly did not need to accept Dr. Boyle's March 2016 opinion, which the ALJ believed was based on Plaintiff's subjective complaints alone. *See Manning*, 182 F. Supp. 3d at 1162.

Accordingly, the ALJ's reasoning—supported by citations to Dr. Boyle's inconsistent treatment notes, and analysis of the objective medical evidence and discrediting of Plaintiff's subjective complaints in other portions of the opinion— adequately substantiates his ultimate conclusion that Dr. Boyle's opinions were entitled to little and no weight. *See, e.g.*, *Martinez,* 2016 WL 1247765, at *4. Although the ALJ could have offered a more detailed explanation of how he weighed Dr. Boyle's opinions,

his failure to do so does not warrant remand because his reasoning is clearly substantiated by the record. *Id.* at *5; *see also Endriss*, 506 F. App'x at 776 ("[T]here is no authority requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." (quotation omitted)); *Davis v. Erdmann*, 607 F.2d 917, 918 n.1 (10th Cir. 1979) ("[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.").

### 2. Dr. Sever's Opinion

Plaintiff next argues that the ALJ did not adequately explain why he gave great weight to the opinion of the Agency's consultative examiner, Dr. Sever. [#16 at 29-30] Dr. Sever opined, in part, that Plaintiff would need to sit for 15 minutes after walking for more than two hours to relieve abdominal pain, and that Plaintiff was limited in pushing and pulling, and would not be able to climb ladders, ropes, or scaffolds, due to possible straining to her abdomen. [AR 17 (citing AR 436-38)] The ALJ afforded "great weight" to Dr. Sever's consultative opinion [*id.*], which was rendered after a review of Plaintiff's medical records and after conducting a physical exam of Plaintiff in February 2016 [AR 426-34]. The ALJ ultimately adopted the foregoing limitations described by Dr. Sever in Plaintiff's RFC. [AR 15]

An ALJ may rely on opinions of examining physicians over the opinions of treating physicians where he has stated specific and legitimate reasons for rejecting the opinions of treating physicians. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498-1500 (10th Cir. 1992). As discussed above, the ALJ gave adequate reasons for rejecting Dr. Boyle's opinions. The ALJ explained that he gave great weight to Dr. Sever's opinion because it was "consistent with the objective evidence," which

demonstrated that "claimant can perform a range of light work." [AR 17-18] "[T]he record provides ample support" for that conclusion. *Pisciotta*, 500 F.3d at 1078. Again, while the ALJ noted Plaintiff's struggles with abdominal pain, urinary retention, nausea and vomiting, he also found that Plaintiff's symptoms had been largely controlled by medications, that she often felt fine and reported doing well, and that Plaintiff did not consistently seek treatment or intervention. [AR 17-18] In his review of the record, the ALJ also indicated that Plaintiff walked for exercise, cared for her parents, including preparing meals, went out to dinner, cared for her cat, shopped, and cleaned her house. [AR 14, 16-18]

As Plaintiff argues, the ALJ failed to address any factors under the regulations other than the consistency between Dr. Sever's opinion and the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Court agrees.[10] But while the ALJ's sparse analysis is concerning, the Court nevertheless finds that the ALJ's evaluation of Dr. Sever's opinion, in conjunction with the ALJ's review of the medical evidence and the record, is supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (finding that while "the lack of analysis accompanying the ALJ's RFC determination [wa]s troubling," a review of the record nevertheless lead the court "to conclude that substantial evidence in the record support[ed] the ALJ's RFC determination").

---

[10] The Court also agrees with Plaintiff that the ALJ's citation to Exhibit 7F, page 1 [*see* AR 18; AR 381], in his evaluation of Dr. Sever's opinion, does not have any bearing on that opinion. [#16 at 29] Instead, Exhibit 7F at page 1 is a note from PA Stephanie Keene on May 19, 2014 [AR 384], reporting that Plaintiff refused an ultrasound, that her nausea was currently controlled, and that Keene advised Plaintiff to decrease her pain medications [AR 381].

The Court thus finds that the ALJ applied the correct legal standards in evaluating the relative weight to accord the medical opinion evidence, and that the weight accorded those opinions is supported by substantial evidence.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision that Plaintiff was not under a disability within the meaning of the SSA from November 1, 2003 through April 14, 2016.


DATED:  April 25, 2018                    BY THE COURT:

                                          s/Scott T. Varholak
                                          United States Magistrate Judge